Gurpreet Kaur, Esq.
Kaur Legal Group, PC
674 County Square Dr, Suite 305
Ventura, CA 93003
Ph. 805-300-9003; Cell 909-997-4570
Fax: 805-716-6100
E-mail: gurpreetkauresq@gmail.com
*Attorney for Petitioner*

**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHANDER KANT<br><br>Petitioner,<br>v.<br>MARK BOWEN, Acting-Warden of the Adelanto Detention Center, DAVID J. VENTURELLA Acting Director of Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary of the U.S. Department of Homeland Security; TODD BLANCHE, Attorney General of the United States<br><br>Respondents. | Civil Action No.<br><br>**VERIFIED PETITION FOR HABEAS CORPUS** |

## INTRODUCTION

1. Petitioner Kant respectfully petitions this Court for a writ of habeas corpus challenging Respondents' revocation of his previously granted liberty without constitutionally adequate process and seeking his immediate release from immigration custody. After initially detaining Petitioner following his entry into the United States, the Government released him from physical custody pursuant to an $18,000 immigration bond and permitted him to live and work in the community subject to Alternatives to Detention ("ATD") supervision and regular reporting to U.S. Immigration and Customs Enforcement ("ICE"). For approximately two years, Petitioner complied with the conditions imposed

upon him, consistently appeared as required, and committed no known violation of his conditions of release. Nevertheless, when Petitioner voluntarily appeared for his regularly scheduled ICE appointment on September 2, 2026, Respondents abruptly detained him without advance notice, without identifying any violation or changed circumstance warranting his detention, and without providing an individualized pre-deprivation hearing or meaningful opportunity to be heard.

2. Petitioner is a native and citizen of India who entered the United States without inspection on or about August 31, 2024. Following his entry, DHS briefly detained Petitioner pursuant to a Form I-200, Warrant for Arrest of Alien. Petitioner was thereafter released from physical custody pursuant to an $18,000 immigration bond. Following his release, Petitioner was subject to ATD supervision and required to report to ICE as directed.

3. On November 5, 2024, DHS served Petitioner with a Notice to Appear charging him solely under INA § 212(a)(6)(A)(i), as a noncitizen present in the United States without being admitted or paroled. Petitioner is presently pursuing an application for asylum before the Immigration Court.

4. Since at least November 5, 2024, Petitioner consistently appeared for his required ICE appointments and complied with the conditions imposed upon him. He has no criminal history and no known history of violating ATD requirements or failing to report to ICE. Petitioner also obtained employment authorization based upon his timely filed asylum application, remained gainfully employed, and established family ties in the United States. Throughout his period of release, DHS knew Petitioner's whereabouts and retained the ability to supervise him in the community.

5. On July 8, 2025, DHS issued Interim Guidance taking the position that certain noncitizens who entered the United States without inspection are subject to mandatory detention under 8 U.S.C. § 1225(b), notwithstanding their prior release into the United States. That position has subsequently been advanced in conjunction with *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025), and

*Matter of Yajure-Hurtado*, 29 I&N Dec. 216 (BIA 2025), concerning the detention authority applicable to certain noncitizens treated as applicants for admission. Petitioner disputes Respondents' characterization of his detention as mandatory under § 1225(b) and contends that, to the extent immigration detention is authorized, his detention falls under 8 U.S.C. § 1226(a).

6. The constitutional injury presented here, however, does not depend solely upon resolution of that statutory dispute. Before September 2, 2026, the Government had affirmatively released Petitioner from physical custody on an $18,000 bond and permitted him to remain at liberty in the community subject to supervision. Petitioner thereafter complied with the Government's requirements for approximately two years. Respondents nevertheless terminated that existing liberty without first providing advance notice, identifying an individualized factual basis demonstrating that detention had become necessary, providing a meaningful opportunity to respond, or affording Petitioner a pre-deprivation hearing before a neutral decisionmaker.

7. On September 2, 2026, Petitioner voluntarily appeared for his regularly scheduled ICE appointment. His appearance was itself an act of compliance with the reporting requirements imposed upon him. At that time, Petitioner had no criminal history, had not violated his ATD requirements, had consistently appeared for his ICE appointments, was pursuing asylum before the Immigration Court, possessed employment authorization, was gainfully employed, and maintained family ties in the United States.

8. Petitioner received no advance notice that ICE intended to detain him at the appointment. Upon his appearance, ICE officers immediately took him into custody. When Petitioner asked why he was being detained, he was not provided an individualized explanation identifying any violation, misconduct, failure to report, or other changed circumstance requiring his immediate confinement.

9. Petitioner informed ICE officers that he was pursuing asylum and presented his employment authorization document issued in connection with his timely filed asylum application. Nevertheless, ICE proceeded with his detention without providing him a meaningful opportunity to present information concerning his compliance, employment, family ties, pending asylum proceedings, or other circumstances bearing upon whether physical detention was necessary.

10. Before taking Petitioner into custody, Respondents did not provide him notice that his existing liberty would be revoked. They did not provide an individualized custody determination or an opportunity to contest the factual basis or necessity for detention. Nor did they provide Petitioner a pre-deprivation hearing before a neutral decisionmaker at which the Government was required to establish an individualized justification for terminating his previously granted liberty.

11. Petitioner therefore does not challenge merely the duration or conditions of an uninterrupted period of immigration detention. DHS had already released Petitioner from physical confinement pursuant to an $18,000 bond, allowed him to live and work in the community, and supervised him for approximately two years. Petitioner challenges Respondents' subsequent termination of that existing liberty despite his sustained compliance and without constitutionally adequate pre-deprivation process.

**12.** A later custody review or other post-deprivation proceeding does not restore the process Petitioner alleges was constitutionally required before Respondents terminated his existing liberty. Petitioner accordingly seeks a writ of habeas corpus directing his immediate release from physical custody and restoration of the liberty Respondents revoked on September 2, 2026, subject to the lawful conditions of his prior release.

## JURISDICTION

13. This action arises under the Constitution of the United States and the INA, 8 U.S.C.

§ 1101 *et seq.*

14. This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause).

15. This Court may grant relief under the habeas corpus statutes, 28 U.S.C. § 2241 *et seq.*, the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and the All Writs Act, 28 U.S.C. § 1651.

**VENUE**

16. Venue is proper because Petitioner is detained in Adelanto Detention Center, which is within the jurisdiction of this District. Venue is also proper in this District because Respondents are officers, employees, or agencies of the United States. *See* 28 U.S.C. § 1391(e).

**PARTIES**

17. Respondent Tonya Andrews is sued in her official capacity as Warden of the Adelanto Detention Center. Respondent Andrews is the physical custodian of Petitioner.

18. Respondent Todd Lyons is sued in his official capacity as the Acting Director of U.S. Immigration and Customs Enforcement. Respondent Lyons is a legal custodian of Petitioner and has authority to release him.

19. Respondent Markwayne Mullin is sued in his official capacity as the Secretary of the U.S. Department of Homeland Security. In this capacity, Respondent Mullin is responsible for the implementation and enforcement of the INA, and oversees ICE, the component agency responsible for Petitioner's detention and custody. Respondent Mullin is a legal custodian of Petitioner.

20. Respondent Todd Blanche is sued in his official capacity as the Attorney General of the United States and the senior official of the U.S. Department of Justice. In that capacity, he has the authority to adjudicate removal cases and to oversee the Executive Office for Immigration Review

("EOIR"), which administers the immigration courts and the BIA. Respondent Blanche is a legal custodian of Petitioner.

## STATEMENT OF FACTS

21. Petitioner Kant is a native and citizen of India.

22. Petitioner entered the United States without inspection on or about August 31, 2024.

23. Following his entry, DHS briefly detained Petitioner pursuant to a Form I-200, Warrant for Arrest of Alien.

24. Petitioner was thereafter released from physical custody pursuant to an $18,000 immigration bond.

25. Following his release, Petitioner was subject to Alternatives to Detention ("ATD") supervision and required to report to ICE as directed.

26. On November 5, 2024, DHS served Petitioner with a Notice to Appear charging him solely under INA § 212(a)(6)(A)(i), as a noncitizen present in the United States without being admitted or paroled.

27. Petitioner is presently pursuing an application for asylum before the Immigration Court.

28. Since at least November 5, 2024, Petitioner has consistently appeared for his required ICE appointments.

29. Petitioner complied with his ATD requirements and committed no known violation of the conditions imposed upon his release.

30. Petitioner has no criminal history.

31. Petitioner timely filed his asylum application and obtained employment authorization in connection with that application.

32. While living in the community, Petitioner remained gainfully employed and established

family ties in the United States.

33. Throughout Petitioner's period of release, DHS remained aware of his whereabouts through ATD supervision and his regular appearances before ICE.

34. Prior to September 2, 2026, DHS had not informed Petitioner that he had violated any condition of his release, ATD supervision, or ICE reporting requirements.

35. Nor had DHS informed Petitioner that it intended to revoke his existing liberty and return him to physical custody.

36. On July 8, 2025, DHS issued Interim Guidance taking the position that certain noncitizens who entered the United States without inspection are subject to detention under 8 U.S.C. § 1225(b), notwithstanding their prior release into the United States.

37. DHS has subsequently advanced that position in conjunction with *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025), and *Matter of Yajure-Hurtado*, 29 I&N Dec. 216 (BIA 2025), concerning the detention authority applicable to certain noncitizens treated as applicants for admission.

38. Petitioner disputes Respondents' characterization of his detention as mandatory detention under § 1225(b) and contends that, to the extent detention is authorized, the applicable detention authority is 8 U.S.C. § 1226(a).

39. On September 2, 2026, Petitioner voluntarily appeared for his regularly scheduled ICE appointment.

40. Petitioner appeared at the ICE office because he was complying with the reporting obligations imposed upon him by DHS.

41. At the time of that appointment, Petitioner had consistently appeared for his required ICE appointments since at least November 5, 2024, and had no known violations of his ATD or reporting requirements.

42. Petitioner had received no advance notice that ICE intended to detain him when he appeared for his appointment.

43. Upon Petitioner's appearance at the ICE office, ICE officers immediately took him into custody.

44. At the time ICE detained him, Petitioner had not been informed of any failure to appear, violation of supervision, criminal conduct, or other changed circumstance that required his immediate detention.

45. Petitioner has no criminal history and was not informed that his detention resulted from any criminal conduct.

46. After being taken into custody, Petitioner asked ICE officers why he was being detained.

47. ICE officers did not provide Petitioner with an individualized explanation identifying why his physical detention had become necessary notwithstanding his history of compliance.

48. Petitioner informed ICE officers that he was pursuing an asylum application before the Immigration Court.

49. Petitioner also presented his employment authorization document issued in connection with his timely filed asylum application.

50. Petitioner was not provided a meaningful opportunity to present evidence concerning his history of compliance, employment, family ties, pending asylum proceedings, or other circumstances bearing upon whether physical detention was necessary.

51. Respondents did not identify to Petitioner any violation of his bond conditions, ATD requirements, or ICE reporting obligations requiring his immediate detention.

52. Respondents likewise did not identify any criminal conduct or failure to appear occurring during Petitioner's approximately two years of liberty in the community.

53. Before taking Petitioner into physical custody, Respondents did not provide him advance notice that they intended to terminate his existing liberty.

54. Respondents did not provide Petitioner with a meaningful opportunity to contest the basis or necessity for detention before taking him into custody.

55. Respondents did not provide Petitioner with an individualized pre-deprivation hearing before a neutral decisionmaker.

56. Petitioner therefore went from living and working in the community pursuant to an $18,000 immigration bond and DHS supervision to physical confinement without advance notice or an individualized pre-deprivation hearing.

57. At the time Respondents revoked Petitioner's liberty, Petitioner had approximately two years of demonstrated compliance with DHS supervision, no criminal history, gainful employment, employment authorization, a pending asylum case, and family ties in the United States.

58. Petitioner's voluntary appearance at the ICE office on September 2, 2026—the very occasion on which Respondents detained him—was itself an act of compliance with the reporting requirements imposed upon him.

59. Petitioner remains detained as a result of Respondents' September 2, 2026 decision to terminate his previously granted liberty.

60. Regardless of whether Respondents characterize Petitioner's present detention as arising under 8 U.S.C. § 1225(b) or § 1226(a), Petitioner was not provided advance notice, a meaningful opportunity to respond, an individualized pre-deprivation custody determination, or a hearing before a neutral decisionmaker before Respondents returned him to physical confinement.

61. Petitioner seeks restoration of the liberty he possessed immediately before Respondents detained him on September 2, 2026.

**STATUTORY FRAMEWORK**

62. The INA prescribes three basic forms of detention for noncitizens in removal proceedings. First, 8 U.S.C. § 1226(a) authorizes the detention of noncitizens in standard non-expedited removal proceedings before an IJ. *See* 8 U.S.C. § 1226(a); 8 U.S.C. § 1229a. Individuals in section 1226(a) detention are entitled to a bond hearing at the outset of their detention, *see* 8 C.F.R. §§ 1003.19(a), 1236.1(d), while noncitizens who have been arrested, charged with, or convicted of certain crimes are subject to mandatory detention, *see* 8 U.S.C. § 1226(c).

63. Second, the INA provides for mandatory detention of noncitizens subject to expedited removal under 8 U.S.C. § 1225(b)(1) and for other recent arrivals seeking admission referred to under 8 U.S.C. § 1225(b)(2).

64. Finally, the INA also provides for detention of noncitizens who are subject to final orders of removal, including individuals in withholding-only proceedings, *see* 8 U.S.C. § 1231(a)–(b). The detention provisions at section 1226(a) and 1225(b)(2) were enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") of 1996, Pub. L. No. 104-208, Div. C, §§ 302–03, 110 Stat. 3009-546, 3009–582 to 3009–583, 3009–585. Section 1226(c) was most recently amended earlier this year by the Laken Riley Act ("LRA"), Pub. L. No. 119-1, 139 Stat. 3 (2025).

65. Following enactment of the IIRIRA, the EOIR drafted new regulations explaining that, in general, people who entered the country without inspection were not considered detained under section 1225 and that they were instead detained under section 1226(a). *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997). In the decades that followed, most noncitizens who entered without inspection—unless they were subject to some other detention authority—received

bond hearings. This practice was also consistent with the practice prior to the enactment of the IIRIRA, in which noncitizens who were not deemed "arriving" were entitled to a custody hearing before an IJ or other hearing officer. See 8 U.S.C. § 1252(a) (1994); *see also* H.R. Rep. No. 104-469, pt. 1, at 229 (1996) (noting that section 1226(a) simply "restates" the detention authority previously found at section 1252(a)).

66. On July 8, 2025, DHS issued a memo to all employees of ICE stating that "[t]his message serves as notice that DHS, in coordination with the Department of Justice (DOJ), has revisited its legal position on detention and release authorities. DHS has determined that section 235 of the Immigration and Nationality Act (INA) [8 U.S.C. § 1225], rather than section 236 [8 U.S.C. § 1226], is the applicable immigration detention authority for all applicants for admission. The following interim guidance is intended to ensure immediate and consistent application of the Department's legal interpretation while additional operational guidance is developed." The memo further stated DHS' new position with regard to custody determinations as follows:

> An "applicant for admission" is an alien present in the United States who has not been admitted or who arrives in the United States, whether or not at a designated port of arrival. INA § 235(a)(1) [8 U.S.C. § 1225(a)(1)]. **Effective immediately, it is the position of DHS that such aliens are subject to detention under INA § 235(b) [8 U.S.C. § 1225(b)] and may not be released from ICE custody except by INA § 212(d)(5) parole.** These aliens are also ineligible for a custody redetermination hearing ("bond hearing") before an immigration judge and may not be released for the duration of their removal proceedings absent a parole by DHS. For custody purposes, these aliens are now treated in the same manner that "arriving aliens" have historically been treated. **The only aliens eligible for a custody determination and release on recognizance, bond, or other conditions under INA § 236(a) [8 U.S.C. § 1226(a)] during removal proceedings are aliens admitted to the United States and chargeable with deportability under INA § 237, with the exception of those subject to mandatory detention under INA § 236(c) [8 U.S.C. § 1226(c)]**.
>
> Moving forward, ICE will not issue Form I-286, Notice of Custody Determination, to applicants for admission because Form I-286 applies by its terms only to custody determinations under INA § 236 and part 236 of Title 8 of the Code of Federal Regulations. With a limited exception for certain habeas petitioners, on which the Office of the Principal Legal Advisor (OPLA) will individually advise, if Enforcement and Removal Operations (ERO) previously conducted a custody determination for an applicant for admission still detained in ICE custody, ERO will

affirmatively cancel the Form I-286. *See* https://www.aila.org/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission (last accessed October 18, 2025) (emphasis original).

67. As a result, DHS now considers all noncitizens who have entered the United States without inspection and are subject to the grounds of inadmissibility, including long-time U.S. residents, to be subject to mandatory detention under section 1225(b) and ineligible for release on bond. Conversely, according to DHS "[t]he only aliens eligible for a custody determination and release on recognizance, bond, or other conditions under INA § 236(a) [8 U.S.C. § 1226(a)] during removal proceedings are aliens admitted to the United States and chargeable with deportability under INA § 237, with the exception of those subject to mandatory detention under INA § 236(c) [8 U.S.C. § 1226(c)]." *Id.*

68. Shortly thereafter, the Board of Immigration Appeals ("BIA") issued decisions reflecting the same interpretation. In Matter of Q. Li, 29 I&N Dec. 66 (BIA 2025) and Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025), the Board concluded that Immigration Judges lack bond authority over certain noncitizens present in the United States without admission because, in the Board's view, § 1225(b)(2)(A) mandates detention of such "applicants for admission" during removal proceedings.

69. The Ninth Circuit has since confirmed that DHS's detention authority must derive from the statute enacted by Congress and may not be expanded through administrative interpretation. See Rodriguez Vazquez v. Bostock, 25-6842 (9th Cir. July 30, 2026). Rodriguez Vazquez reinforces that mandatory detention provisions must be applied according to their statutory terms and that DHS may not invoke mandatory detention where Congress has not authorized it.

70. Petitioner Kant entered the United States on or about August 31, 2024, without inspection. Following his entry, DHS briefly detained Petitioner pursuant to a Form I-200, Warrant for

Arrest of Alien. Petitioner was thereafter released from physical custody pursuant to an $18,000 immigration bond. Following his release, Petitioner was placed on Alternatives to Detention ("ATD") supervision and required to report to U.S. Immigration and Customs Enforcement ("ICE") as directed. DHS served Petitioner with a Notice to Appear on November 5, 2024, charging him solely under INA § 212(a)(6)(A)(i). Petitioner thereafter remained at liberty in the United States for approximately two years while complying with DHS supervision, consistently appearing for required ICE appointments, maintaining valid employment authorization based upon his timely filed asylum application, remaining gainfully employed, and maintaining family ties in the United States.

71. Because DHS released Petitioner from physical custody pursuant to an immigration bond and thereafter placed him in removal proceedings under INA § 240, Petitioner contends that any subsequent detention is governed by 8 U.S.C. § 1226(a), which establishes a discretionary custody framework permitting an individualized custody determination. Petitioner disputes that DHS may release him into the community on an $18,000 bond, supervise him there while he complies with all imposed conditions, and thereafter invoke 8 U.S.C. § 1225(b) to categorically eliminate the individualized custody protections ordinarily associated with § 1226(a).

72. Respondents nevertheless rely upon DHS's July 8, 2025 Interim Guidance, together with *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025), and *Matter of Yajure-Hurtado*, 29 I&N Dec. 216 (BIA 2025), to assert that certain noncitizens who entered the United States without inspection remain subject to detention under § 1225(b) notwithstanding their prior release into the United States.

73. Petitioner disputes Respondents' statutory interpretation. Neither *Matter of Q. Li* nor *Matter of Yajure-Hurtado* resolves whether DHS may summarily terminate the existing liberty of an individual whom the Government previously released from physical custody on bond and thereafter supervised in the community without providing constitutionally adequate process. Those decisions

principally address the statutory custody framework and the scope of Immigration Judge authority; they do not eliminate the independent protections imposed by the Due Process Clause when the Government revokes previously granted physical liberty.

74. Respondents' position also fails to account for the procedural posture DHS itself created. DHS released Petitioner from physical confinement pursuant to an $18,000 bond, permitted him to remain in the community under supervision, required him to report regularly to ICE, and allowed that arrangement to continue for approximately two years while Petitioner complied with the conditions imposed upon him. Petitioner therefore possessed an existing state of liberty before his September 2, 2026 detention.

75. Independent of the parties' dispute concerning whether § 1225(b) or § 1226(a) ultimately supplies the statutory detention authority, Respondents violated the Fifth Amendment by revoking Petitioner's previously granted liberty without constitutionally adequate pre-deprivation process.

76. Following his release, Petitioner consistently complied with DHS supervision. He appeared for his required ICE appointments, including consistently reporting since at least November 5, 2024, complied with ATD requirements, remained available to immigration authorities, and was never advised that he had violated a condition of his bond, release, or supervision. Petitioner has no criminal history.

77. Petitioner also has an asylum application pending before the Immigration Court. He timely filed his asylum application, obtained valid employment authorization based upon that application, remained gainfully employed, and maintained family ties in the United States. DHS remained aware of Petitioner's whereabouts and immigration proceedings through his regular reporting and continuing supervision.

78. On September 2, 2026, Petitioner voluntarily appeared for his regularly scheduled ICE appointment. His appearance was itself an act of compliance with the reporting requirements DHS had imposed upon him.

79. Before Petitioner reported for that appointment, DHS provided no notice that it intended to revoke his liberty or return him to physical custody. Petitioner had not missed his required ICE appointments, had not violated his ATD obligations or other conditions of supervision, and had not been informed of any allegation that he had failed to comply with DHS requirements.

80. Upon Petitioner's appearance at the ICE office, ICE officers immediately detained him.

81. After being taken into custody, Petitioner asked why he was being detained. ICE officers did not provide him with an individualized explanation identifying why his detention had suddenly become necessary notwithstanding his history of compliance.

82. Petitioner informed ICE officers that he had a pending asylum application and presented his valid employment authorization document issued in connection with his timely filed asylum application. Petitioner further advised officers of his continued compliance with immigration requirements and his history of appearing as directed.

83. Respondents nevertheless detained Petitioner without first providing him a meaningful opportunity to address any asserted concern regarding his custody, compliance, immigration proceedings, employment, family ties, or other circumstances relevant to whether detention was necessary.

84. Before revoking Petitioner's liberty, Respondents did not provide him with advance notice of the proposed deprivation or identify any individualized factual basis demonstrating that immediate detention was required.

85. Respondents did not identify any criminal conduct by Petitioner.

86. Respondents did not identify any violation of Petitioner's bond conditions, ATD requirements, or ICE reporting obligations.

87. Respondents did not identify any failure by Petitioner to appear for a scheduled ICE appointment.

88. Respondents did not identify any changed circumstance arising during Petitioner's approximately two years of release that rendered his continued liberty inappropriate or made immediate physical confinement necessary.

89. Respondents likewise did not provide Petitioner with an opportunity to present evidence or argument concerning his continued compliance, lack of criminal history, employment, pending asylum proceedings, family ties, or demonstrated ability to remain available to immigration authorities.

90. Petitioner was not afforded any individualized pre-deprivation hearing before a neutral decisionmaker.

91. Petitioner was therefore taken from an existing state of liberty in the community, maintained pursuant to an $18,000 immigration bond and DHS supervision, and returned to physical confinement without advance notice, without a meaningful opportunity to respond, and without an individualized determination before the deprivation occurred.

92. The absence of such process is particularly significant because the Government had previously determined that Petitioner could remain outside physical custody upon the posting of an $18,000 bond and subject to continuing supervision. Petitioner thereafter complied with those conditions for approximately two years before Respondents abruptly reversed that existing custody arrangement.

93. Once the Government has granted an individual conditional liberty, the Due Process Clause protects against its arbitrary termination. *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972).

94. Due process generally requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner before the Government deprives an individual of a protected liberty interest. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); *Fuentes v. Shevin*, 407 U.S. 67, 80–82 (1972).

95. Respondents provided none of those safeguards here. Petitioner voluntarily appeared at his regularly scheduled ICE appointment in compliance with DHS supervision and was immediately detained despite having no criminal history, no identified violation of his bond or supervision requirements, a pending asylum proceeding, valid employment authorization, gainful employment, and family ties in the United States.

96. Respondents did not provide Petitioner advance notice that his liberty would be revoked, identify an individualized factual basis establishing the necessity for detention before taking him into custody, afford him a meaningful opportunity to respond, or provide an individualized pre-deprivation hearing before a neutral decisionmaker.

97. The constitutional violation was complete when Respondents terminated Petitioner's previously granted liberty without constitutionally adequate pre-deprivation process.

98. A later custody review or post-deprivation hearing cannot retroactively provide the process that was absent before Petitioner's physical liberty was taken. Such a proceeding would occur only after the challenged deprivation had already occurred and therefore would not restore the pre-deprivation protections Petitioner alleges the Fifth Amendment required.

99. Accordingly, Petitioner seeks immediate release from physical custody and restoration of the liberty he possessed immediately before Respondents detained him on September 2, 2026, subject to the lawful conditions governing his prior release.

## **CLAIMS FOR RELIEF**

## COUNT ONE

## Violation of Petitioner's Procedural Due Process Rights

100. The allegations in the above paragraphs are realleged and incorporated herein.

101. The Fifth Amendment prohibits the government from depriving a person of liberty without due process of law

102. Under Mathews v. Eldridge, 424 U.S. 319 (1976), courts evaluate procedural due process claims by considering: (1) the private interest affected; (2) the risk of erroneous deprivation through the procedures used and the value of additional safeguards; and (3) the governmental interests at stake.

103. The private interest at stake here—freedom from physical detention—is among the most fundamental liberty interests protected by the Constitution.

104. Petitioner possessed an existing and substantial liberty interest arising from the Government's prior decision to release him from physical custody pursuant to an $18,000 immigration bond and permit him to remain at liberty in the community subject to ATD supervision and regular ICE reporting requirements.

105. For approximately two years, Petitioner remained at liberty pursuant to that release arrangement while complying with the conditions imposed upon him. He consistently appeared for required ICE appointments, complied with ATD requirements, maintained valid employment authorization based upon his timely filed asylum application, remained gainfully employed, maintained family ties in the United States, and remained continuously available to immigration authorities.

106. Petitioner has no criminal history and, prior to September 2, 2026, had never been advised that he violated any condition of his bond, release, or supervision.

107. The risk of erroneous deprivation was substantial because Respondents revoked Petitioner's previously granted liberty without advance notice, without identifying any violation or

changed circumstance requiring detention, without affording Petitioner a meaningful opportunity to respond, and without providing an individualized pre-deprivation determination before a neutral decisionmaker.

108. Additional procedural safeguards—including advance notice of the proposed detention, disclosure of the factual and legal basis for revocation, a meaningful opportunity to present contrary evidence and argument, and an individualized pre-deprivation hearing—would have substantially reduced the risk of erroneous deprivation while imposing comparatively modest administrative burdens upon Respondents.

109. On September 2, 2026, Petitioner voluntarily appeared for his regularly scheduled ICE appointment in compliance with the reporting requirements imposed upon him.

110. Prior to taking Petitioner into custody, Respondents failed to provide:

a. advance notice that DHS intended to revoke his liberty;

b. notice of any alleged violation, changed circumstance, or other individualized basis for detention;

c. a meaningful opportunity to contest the factual or legal basis for detention;

d. an individualized custody determination; or

e. a pre-deprivation hearing before a neutral decisionmaker.

111. Upon Petitioner's appearance at the ICE office, Respondents immediately detained him.

112. After being taken into custody, Petitioner asked why he was being detained. Respondents did not provide him with an individualized explanation identifying why detention had suddenly become necessary notwithstanding his history of compliance.

113. Petitioner informed ICE that he had a pending asylum application before the Immigration Court and presented his valid employment authorization document issued in connection with his timely

filed asylum application. Petitioner further advised officers of his continued compliance with DHS supervision.

114. Respondents nevertheless detained Petitioner without providing him any meaningful opportunity to explain his circumstances, present evidence concerning his compliance, employment, family ties, pending immigration proceedings, or otherwise contest the proposed deprivation before his liberty was taken.

115. Respondents did not identify any criminal allegation, violation of Petitioner's bond conditions or ATD requirements, missed ICE appointment, violation of another condition of supervision, or other intervening event that justified the sudden termination of Petitioner’s previously granted liberty.

116. Nor did Respondents make or provide Petitioner with any individualized determination, before detention, that he presented a danger to the community, a risk of flight, or any other circumstance requiring immediate physical confinement.

117. Respondents therefore revoked Petitioner’s existing liberty without constitutionally adequate notice, without a meaningful opportunity to be heard, and without individualized pre-deprivation process.

118. Under the circumstances alleged here, the Government’s interests did not justify dispensing entirely with pre-deprivation process. Petitioner had remained subject to DHS supervision for approximately two years, had consistently appeared as directed, and voluntarily presented himself to ICE on September 2, 2026. Nothing about Petitioner’s conduct prevented Respondents from providing meaningful procedures before terminating his liberty.

119. The constitutional violation occurred when Respondents deprived Petitioner of his previously granted liberty without providing the process constitutionally required before that deprivation.

120. A later custody review or other post-deprivation proceeding cannot retroactively provide

the advance notice, opportunity to respond, and individualized determination that were absent before Petitioner was taken into physical custody.

121. Petitioner's detention therefore violates the Due Process Clause of the Fifth Amendment, and habeas relief restoring Petitioner to the liberty he possessed immediately before his September 2, 2026 detention is warranted.

**COUNT TWO**

**Violation of Fifth Amendment Right to Substantive Due Process**

122. Petitioner realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

123. The Fifth Amendment provides that no person shall be deprived of liberty without due process of law. U.S. Const. amend. V. Freedom from physical restraint lies at the core of the liberty protected by the Due Process Clause. Zadvydas v. Davis, 533 U.S. 678, 690 (2001).

124. Petitioner entered the United States without inspection on or about August 31, 2024. Following his entry, DHS briefly detained Petitioner pursuant to a Form I-200, Warrant for Arrest of Alien. Petitioner was thereafter released from physical custody pursuant to an $18,000 immigration bond and permitted to reside in the community subject to ATD supervision and regular ICE reporting requirements.

125. DHS served Petitioner with a Notice to Appear on November 5, 2024, charging him solely under INA § 212(a)(6)(A)(i). Petitioner thereafter remained at liberty in the United States for approximately two years while his removal proceedings and asylum application remained pending before the Immigration Court.

126. Throughout that period, Petitioner complied with the conditions imposed upon him by DHS. He consistently appeared for required ICE appointments, complied with ATD requirements,

remained continuously available to immigration authorities, maintained valid employment authorization based upon his timely filed asylum application, remained gainfully employed, maintained family ties in the United States, and has no criminal history.

127. On September 2, 2026, Petitioner voluntarily appeared for his regularly scheduled ICE appointment, as DHS required him to do and as he had consistently done since at least November 5, 2024.

128. Despite Petitioner's history of compliance and voluntary appearance, ICE officers immediately detained him.

129. Petitioner asked why he was being detained. Respondents did not identify any criminal conduct, violation of bond conditions, violation of ATD requirements, missed ICE appointment, violation of another condition of supervision, or other individualized factual circumstance demonstrating that Petitioner's physical confinement had become necessary.

130. Petitioner informed ICE that he had a pending asylum application before the Immigration Court and presented his valid employment authorization document. Respondents nevertheless proceeded with his detention without identifying any individualized change in Petitioner's circumstances warranting termination of the liberty the Government had previously granted him.

131. Petitioner's re-detention was not preceded by any identified failure to comply with DHS supervision, criminal conduct, failure to appear, or other intervening event demonstrating that the Government's prior custody determination permitting Petitioner to remain at liberty on an $18,000 bond was no longer appropriate.

132. Instead, Respondents rely upon a categorical interpretation of the immigration detention statutes reflected in DHS's July 8, 2025 Interim Guidance and decisions including *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025), and *Matter of Yajure-Hurtado*, 29 I&N Dec. 216 (BIA 2025), notwithstanding Petitioner's prior release from physical custody and his subsequent history of compliance.

133. Petitioner disputes Respondents' contention that this categorical statutory interpretation permits his detention under 8 U.S.C. § 1225(b). But even apart from the parties' statutory dispute, civil immigration detention remains subject to the constraints of the Due Process Clause and must bear a reasonable relationship to a legitimate governmental purpose. *See Zadvydas*, 533 U.S. at 690.

134. Here, the Government permitted Petitioner to remain at liberty under an $18,000 immigration bond and DHS supervision for approximately two years. During that period, Petitioner demonstrated his continued availability to immigration authorities by consistently complying with reporting requirements and appearing as directed. His voluntary appearance at the September 2, 2026 ICE appointment further demonstrated his continued compliance and availability to DHS.

135. Respondents nevertheless terminated Petitioner's physical liberty without identifying any individualized circumstance showing that detention had become necessary to address a danger to the community, a risk of flight, a failure to comply with DHS supervision, or another legitimate custody concern.

136. Under these circumstances, Petitioner alleges that subjecting him to physical confinement based upon a categorical change in Respondents' interpretation of the governing detention statute, despite the Government's prior decision to release him on an $18,000 bond and Petitioner's subsequent demonstrated compliance, constitutes an arbitrary deprivation of physical liberty.

137. The Government possesses legitimate interests in ensuring appearance at immigration proceedings and protecting the community. But Respondents identified no individualized facts demonstrating that Petitioner's detention furthered either interest where Petitioner has no criminal history, consistently appeared as required, complied with DHS supervision, remained available to immigration authorities, and voluntarily presented himself for the very ICE appointment at which he was detained.

138. Respondents' re-detention of Petitioner under these circumstances constitutes an arbitrary

deprivation of physical liberty in violation of the substantive component of the Fifth Amendment's Due Process Clause.

139. Petitioner's continued physical confinement perpetuates that unconstitutional deprivation of liberty.

140. Accordingly, Petitioner seeks immediate release from physical custody and restoration of the liberty he possessed immediately before Respondents detained him on September 2, 2026.

**COUNT THREE**

**Violation of the Immigration and Nationality Act**

141. Petitioner realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

142. Shortly after entering the United States on August 31, 2024, Petitioner was detained pursuant to a Form I-200, Warrant for Arrest of Alien. Petitioner was thereafter released from physical custody pursuant to an $18,000 immigration bond and permitted to remain in the community subject to ATD supervision and regular ICE reporting requirements.

143. DHS served Petitioner with a Notice to Appear on November 5, 2024, charging him solely under INA § 212(a)(6)(A)(i). Petitioner thereafter remained at liberty for approximately two years while pursuing his asylum application before the Immigration Court and complying with DHS supervision.

144. Respondents now contend that Petitioner is subject to detention under 8 U.S.C. § 1225(b) and therefore not entitled to the discretionary custody framework applicable under 8 U.S.C. § 1226(a).

145. Respondents rely upon DHS's July 8, 2025 Interim Guidance, *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025), and *Matter of Yajure-Hurtado*, 29 I&N Dec. 216 (BIA 2025), to support that position.

146. Petitioner contends that neither *Matter of Q. Li* nor *Matter of Yajure-Hurtado* establishes that DHS may treat Petitioner as categorically subject to mandatory detention under § 1225(b) after the

Government previously released him from physical custody pursuant to an $18,000 immigration bond and thereafter supervised him in the community while his § 240 removal proceedings remained pending.

147. Because Petitioner was released from physical custody pursuant to an immigration bond, placed in removal proceedings under INA § 240, and thereafter remained at liberty subject to continuing DHS supervision, Petitioner contends that any subsequent detention is governed by 8 U.S.C. § 1226(a), rather than § 1225(b).

148. Section 1226(a) provides a discretionary custody framework under which detention is not categorically mandatory and custody may be determined on an individualized basis.

149. Petitioner further contends that Respondents may not transform his existing discretionary custody arrangement into mandatory detention solely through a subsequent categorical reinterpretation of the governing detention statutes.

150. Respondents' categorical application of § 1225(b) to Petitioner therefore exceeds the detention authority conferred by the INA and is contrary to law.

151. Because Petitioner's present detention is not authorized under Respondents' asserted statutory basis, habeas relief under 28 U.S.C. § 2241 is warranted.

**COUNT FOUR**

**Violation of the Administrative Procedure Act**

152. Petitioner realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

153. Petitioner brings this claim pursuant to 5 U.S.C. §§ 702, 704, and 706 and 28 U.S.C. § 1331.

154. DHS's determination that Petitioner is categorically subject to detention under 8 U.S.C. § 1225(b), together with its September 2, 2026 decision to re-detain Petitioner when he voluntarily appeared

for his regularly scheduled ICE appointment, constitutes the agency action challenged herein.

155. Petitioner entered the United States without inspection on August 31, 2024, was initially detained pursuant to a Form I-200, and was thereafter released from physical custody pursuant to an $18,000 immigration bond. DHS subsequently placed Petitioner in removal proceedings under INA § 240 by serving him with a Notice to Appear on November 5, 2024.

156. Following his release, Petitioner remained at liberty in the community for approximately two years subject to ATD supervision and regular ICE reporting while pursuing his asylum application before the Immigration Court.

157. During that period, Petitioner consistently complied with the conditions imposed upon him. He appeared for required ICE appointments, complied with ATD requirements, remained available to immigration authorities, maintained valid employment authorization, remained gainfully employed, maintained family ties in the United States, and accumulated no criminal history.

158. By treating Petitioner as categorically subject to detention under § 1225(b), notwithstanding the Government's prior release of Petitioner pursuant to an $18,000 bond, his placement in § 240 removal proceedings, and his subsequent history of compliance, Respondents have acted in excess of the detention authority Petitioner contends is conferred by the INA.

159. DHS's action is arbitrary and capricious because the agency:

a. provided no individualized custody determination before terminating Petitioner's existing liberty;

b. relied upon a revised categorical interpretation of the governing detention statutes rather than any identified new conduct or changed factual circumstance concerning Petitioner;

c. failed to meaningfully account for Petitioner's approximately two years of demonstrated compliance with DHS supervision;

d. failed to identify any criminal conduct, failure to appear, violation of supervision, danger to the community, or flight risk requiring immediate physical confinement; and

e. failed to account for the settled custody arrangement created by the Government's prior decision to release Petitioner pursuant to an $18,000 bond and supervise him in the community.

160. An agency changing course must provide a reasoned explanation for its action and adequately account for serious reliance interests created by its prior policy or conduct.

161. Here, Respondents provided Petitioner no individualized explanation for reversing the custody arrangement under which he had remained at liberty and compliant for approximately two years.

162. Respondents also failed to identify any individualized factual development between Petitioner's prior release and his September 2, 2026 re-detention demonstrating that physical confinement had become necessary.

163. Because Respondents' challenged custody determination is contrary to law, exceeds statutory authority, and is arbitrary and capricious, Petitioner seeks relief pursuant to 5 U.S.C. § 706, including an order setting aside the challenged agency action and restoring Petitioner to the liberty he possessed immediately before his September 2, 2026 detention.

## PRAYER FOR RELIEF

Wherefore, Petitioner requests this Court to grant the following:

1. Assume jurisdiction over this matter and issue a writ of habeas corpus pursuant to 28 U.S.C. § 2241;

2. Enjoin Respondents from transferring Petitioner outside the jurisdiction of this Court during the pendency of these proceedings absent prior authorization from this Court;

3. Declare that Respondents' September 2, 2026 revocation of Petitioner's previously granted

liberty and his continued detention violate the Due Process Clause of the Fifth Amendment;

4. Declare that Respondents' categorical detention of Petitioner under 8 U.S.C. § 1225(b), following his prior release from physical custody pursuant to an $18,000 immigration bond and placement in removal proceedings under INA § 240, is contrary to the Immigration and Nationality Act;

5. Declare that Respondents' challenged custody determination and re-detention of Petitioner are contrary to law, in excess of statutory authority, and arbitrary and capricious within the meaning of the Administrative Procedure Act;

6. Vacate and set aside Respondents' unlawful custody determination and challenged agency action pursuant to 5 U.S.C. § 706;

7. Order Petitioner's immediate release from ICE custody and restoration to the conditional liberty he possessed immediately before his September 2, 2026 detention, subject to the lawful terms and conditions governing his prior release on an $18,000 immigration bond, including any applicable ATD supervision and ICE reporting requirements;

8. Enjoin Respondents from continuing to detain Petitioner on the basis of the challenged September 2, 2026 custody determination without constitutionally adequate process and lawful statutory authority;

9. Enjoin Respondents from re-detaining Petitioner based upon the same circumstances underlying the September 2, 2026 detention without constitutionally adequate pre-deprivation procedures, including notice and a meaningful opportunity to be heard, except in the event of exigent circumstances or materially changed circumstances recognized by law;

10. Award Petitioner reasonable attorneys' fees, costs, and expenses pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412, to the extent permitted by law;

11. Retain jurisdiction to enforce any order entered in this matter; and

12. Grant such other and further relief as the Court deems just, proper, and equitable.

Respectfully,

/s/ *Gurpreet Kaur*
Gurpreet Kaur, Esq.
Attorney for Petitioner

**VERIFICATION PURSUANT TO 28 U.S.C. § 2242**

I am counsel for Petitioner, and I submit this verification on his behalf. Because Petitioner is detained at the Adelanto Detention Center and immediate relief is sought, counsel verifies this petition on his behalf pursuant to 28 U.S.C. § 2242. I hereby verify that the factual statements made in the foregoing Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated this 7th day of September, 2026.

/s/ *Gurpreet Kaur*
Gurpreet Kaur, Esq.